PREPAYMENT CAR SALES CO. v. ORANGE COUNTY TRACTION CO.

(District Court, S. D. New York. May 26, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PASSENGER CAR.

    The Rowntree patent, No. 935,929, for a passenger car of the so-called "pay as you enter" type *held* void for lack of invention as to claims 3, 4, 5, and 6, and not infringed as to claims 7 to 16, inclusive.

At Law. Action by the Prepayment Car Sales Company against the Orange County Traction Company. Trial to court. Judgment for defendant.

Judgment affirmed by Circuit Court of Appeals, 214 Fed. 576.

The following are the drawings of patent No. 935,929, referred to in the opinion:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Samuel E. Darby and Martin W. Littleton, both of New York City, for plaintiff.

Clarence P. Byrnes, of Pittsburgh, Pa., and Israel Shrimski, of Chicago, Ill., for defendant.

VEEDER, District Judge. This is an action at law for infringement of patent No. 935,929, granted October 5, 1909, to Harold Rowntree, for a new and useful invention in passenger cars. The infringement complained of is the use by the defendant of 11 street cars at Newburgh, N. Y., which are alleged to infringe the Rowntree patent as defined in claims 3 to 16 thereof. By stipulation of the parties the action was tried before the court without a jury.

As stated in the specification of the patent Rowntree's object was to provide a passenger car for street or other railways embodying means which are simple in construction and arrangement, whereby the collection of fares as the passengers enter the car is facilitated. The invention is declared to consist substantially in the construction, combination, location, and relative arrangement of parts, as shown in the accompanying drawings and finally pointed out in the appended claims. In specification of the particular object aimed at, Rowntree refers to the difficulty experienced by street railway companies in the larger cities where the traffic is heavy in securing the full return of fares for the passengers transported, arising both from the avoidance of payment by the passenger and from the neglect or dishonesty of the conductor. Among the expedients resorted to in the endeavor to overcome this difficulty is the use of what is commonly called "pay as you enter" cars. In the construction of cars commonly employed in connection with this method a railing is placed on the platform on the end of the car so as to provide a separate entrance and exit passage, and the fare is collected as the passenger enters the car by a conductor stationed on the platform in a convenient position with reference to the entrance passage into the body of the car. Still, two disadvantages are said to have been experienced in the use of this method of operation. Inasmuch as the conductor is located on the platform outside the car body, and beyond the observation of passengers within the car, he is able to collect fares without registering them; and the location of the railing upon the platform, separating the entrance and exit passages, necessitates an increase in platform space, and consequent increase in cost of construction without any increase in carrying capacity. Rowntree states that his particular object was to secure simple and inexpensive means for the collection of fare as the passenger enters the car, whereby the conductor is always in plain view of persons inside the car, and whereby ordinary cars may be readily converted for use upon the "pay as you enter" plan.

"In carrying out my invention" he continues, "I propose to employ a railing or other suitable or convenient form of partition and which is arranged to extend into the body of the car from or adjacent the doorway or entrance, in such relation as to provide a restricted entrance passage through which the passengers pass in entering the car, and whereby the conductor can readily and easily collect the fares, from a point inside the car, from the passengers as they enter the car."

It is asserted that the invention may be carried into practical operation with various styles and types of cars, and that he is not to be restricted to the type described.

The specification then refers to and explains the accompanying drawings embodying the principles of the invention claimed, and the practical application of the various features in the attainment of the object sought. Describing specifically figures 1, 2, and 3, he says that the vestibules may be provided with doors, and the doors may be movable. Further, the doors may be operated in any suitable or convenient manner, and in the form shown, it is pointed out, means are provided whereby the door operating connections may be controlled by the conductor or the motorman.

"The parts so far described may be of the usual or any desired construction, and in the specific structure thereof form no part of my present invention."

Proceeding, then, to describe his invention as shown in figures 1, 2, and 3, he states that a railing or partition 18 is arranged to extend from the end wall of the vestibule into the body of the car, forming the entrance passageway 19, and, if desired, an exit passageway 20 into and from the body of the car. In practice the passengers are to leave the car through the front doors, which are operated by the motorman, or otherwise. The conductor is stationed in the passage 20.

"When passengers get on the car they enter through the door 10, and, passing down the car through the restricted passage 19, formed by the railing, they give their fares to the conductor, who occupies the passage 20. If the traffic is light, the conductor occupies a position closely adjacent the door and collects the fares from that point. He has the freedom, however, of the entire length of the passage 20, which is determined by the length of the partition or railing 18, and hence, if the traffic is heavy, or if passengers enter the car in large numbers, then the conductor may move back and forth along the passage 20, and so collect the fares of all the passengers as they enter the car." "It may be sometimes desired to use the same door 10, for the entrance as well as the exit of passengers. In this event I may employ a gate 21, in the railing 18, when such railing is used and by means of which passengers may leave the car through the passage 20, the gate 21, and the door 10, while other passengers are entering the car through the door 10, and passageway 19."

Finally, the patentee describes his invention as applied to the type of car shown in figures 4 and 5, having a bulkhead between the car body and the platform.

"In this type of car the railing 26 is arranged inside the car, and extends from a point adjacent the doorway lengthwise of the car a distance sufficient to form the restricted passageways 27, 28, of extended length into the car. The conductor is stationed in one of these passageways, as 28, while passengers entering the car pass through the other passageway 27, and deliver their fares to the conductor as they enter. In this case the conductor is always on the inside of the car where he may be constantly under the observation of an inspector or other passenger who might desire to watch him."

"From the foregoing description," concludes the patentee, "it will be seen that I provide an exceedingly simple and efficient 'pay as you enter' arrangement which avoids the necessity for providing an enlarged area of platform, and which can be applied with ease and economy to cars of the ordinary construction without involving any material change in the structure thereof."

It thus appears from Rowntree's disclosure in his specification that he deemed his invention to consist in placing the conductor alongside a dividing barrier inside the car body, where he is under observation ("pay within" as distinguished from "pay as you enter"), thus embodying all the advantages of the pay as you enter type of cars without requiring enlarged platform space. This is the feature common to both types of car illustrated, and the specification itself shows that all other parts are mere adjuncts, not forming part of the invention claimed. In other words, from the standpoint of the plaintiff's argument, the novelty lay in placing the means for controlling the door in the hands of the conductor at a new prepayment point. In his testimony Rowntree admitted that it was the placing of the conductor in the car body proper along the barrier that overcame the two specified disadvantages of the pay as you enter car, although he now disclaims that the invention of the claims in issue is present in figure 4 because there are neither side doors nor means associated with the railing inside the bulkhead for operating doors; and he asserts that figure 4 and its description are mere surplusage.

The claims, however, go far beyond the disclosure made in the specification. The process of enlarging the scope of the claims beyond the original specification is shown by the file contents in the Patent Office. Every one of the 20 original claims filed in the application recited that the means for forming a restricted passageway was arranged in the car or extended longitudinally into the car. This was the principal feature of the original claims; only five of the claims mentioned means for moving the door. After the first office rejection of the application as a whole on August 10, 1908, the claims were further amended by locating the barrier still more definitely inside the car. In the next office letter the examiner cited further references, showing barriers inside the car body, and stated that:

"All the claims rest for their patentability upon the question whether or not a dividing rail inside the car body is new."

When, on October 28, 1908, the examiner recommended two claims for interference, the applicant filed several additional broad claims. The interference was finally declared on claims 1 to 9 of the patent in suit. The other parties in interference, Coons and Lincoln, had filed later applications; no testimony was taken; Rowntree recovered on his record date. Thus the record stood until November 1, 1912, when the Patent Office declared an interference between claims 7, 11, 14, 15, and 16 of the Rowntree patent and the application of Harry M. Sloan, serial number 398,517, which is still pending. The defendant herein is a licensee under this Sloan application, which was filed on October 21, 1907, seven months prior to the date of Rowntree's application.

The claims are 16 in number, and all save the first two are alleged to be infringed. Claim 3 is as follows:

"A passenger car having a main car body and an end vestibule, the car body space merging unobstructedly into the vestibule space, a door and a doorway in the side of the vestibule, and means located between the car body space and the door for operating the latter."

Claim 4 differs from claim 3 in specifying that the aisle space of the body structure opens unobstructedly its full width into the vestibule space, and that the means for controlling the operation of the door are arranged in the said opening. In claim 5 the means for controlling the movement of the door are located adjacent the point of mergence of the car body space and the vestibule space. Claim 6 differs from claim 5 in specifying an inclosed end vestibule. Claim 7 specifies a car provided with wide entrance and exit ways at one end of the main car body structure where merging with a platform having movable portions, and means provided with a lever for actuating said movable portions located to define the entrance and exit ways from the platform to the main car body. Claim 8 differs from claim 7 in specifying wide entrance and exit ways at both ends of a main car body structure, directly connected with an inclosed platform, and that the lever for actuating the movable side is operatively controlled by a conductor. In claim 9 the car body structure is provided with an end opening wider than that of the aisle within the car body at the point where merging into a platform, and means in said opening to form the conductor's station, thereby dividing by the conductor's station said opening into passageways to and from the main car body. Claim 10 specifies a car body and a side door; an unobstructed passage leading from the side door into the car body, and means located within the car body to define entrance and exit ways through said passage, and to operate the door. Claim 11 differs from claim 10 in specifying a car having separate entrance and exit ways into and from the aisle space of the car body, between which the door controlling means are located. In claim 12 there is a car body into which an end platform merges unobstructedly, and means located within the car body to define entrance and exit ways through said passage and to operate the door. In claim 13 the means for operating the door are not required to define entrance and exit ways. Claim 14 specifies means arranged to divide the space inside the door into separate entrance and exit passages, and means also arranged inside the door, but removed therefrom, for controlling the operation of the door. In claim 15 the means located inside the door for operating the door serve to divide the space inside the door into separate entrance and exit passages, and a vestibule is prescribed. Claim 16 differs from claim 15 in that the means for dividing the space inside the door into separate entrance and exit passages and the means for controlling the door are specified separately, and the latter are located adjacent the former.

Summarizing these claims it appears that less than half of them (i. e., 3 to 6, 12 and 13) call expressly for a passenger car having a car body or body space (or aisle space, or end opening), a platform or vestibule space with a door in the side thereof, and the unobstructed mergence of the two spaces. Claims 10, 11, and 14 do not mention a platform or vestibule space. All the claims save 9 specify a door (side or portion); in all save claims 10, 11, and 14 the door is expressly placed in the vestibule or platform. All the claims save 9 specify means (in claims 7 and 8 a lever) for controlling the operation of the door. The location of the means thus prescribed is variously described: Simply

within the car body or space (claims 10, 12, 13), or within the car and between the entrance and exit ways (claim 11); inside the door (claim 15), but removed therefrom (claim 14), and adjacent the separate entrance and exit passages (claim 16); between the car body space (claim 3); adjacent the point of mergence (claims 5, 6); in the opening of the car body space into the vestibule or platform space (claims 4, 9); located to define the entrance and exit ways from the platform to the main car body (claims 7, 8). All the claims, save 3, 4, 5, 6, and 13, provide for separate entrance and exit ways into and from the aisle space of the car body, or means to define the entrance and exit ways from the platform to the main car body, or inside the door. The means of separation are variously located (except in claims 7 and 8); within the car body (claims 10, 12); inside the door (claims 14, 15, 16); in the opening of a car body structure provided with an end opening (claim 9). In claims 7, 8, and 15 the means for controlling the movement of the door define or provide the separate entrance and exit passages.

Upon these claims the plaintiff seeks to cover every car which has a side door controlled from a conductor's distant prepayment point, wherever located. And the advantages now claimed for the alleged invention have been correspondingly enlarged. In addition to the two objects which Rowntree states in his specification that he had in view (i. e., placing the conductor in the car under the observation of the passengers, and a method of converting ordinary cars into the pay as you enter type without enlarging the platform space) the complainant now relies upon these advantages: Protection of the conductor and passengers from the weather, better ventilation of the car, and, above all, the elimination of boarding and alighting accidents. Indeed in the presentation of its case, the latter seems to be the principal utility now relied upon. In short, the utility disclosed in the specification relates to the collection of fares, while the advantage now asserted for the claims arises out of protection of the passengers from boarding and alighting accidents.

There are really five elements to the combination claimed by the complainant: (1) A car having a car body and platform or vestibule space merging unobstructedly; (2) a movable side entrance door; (3) means for controlling the door; (4) means for separating the entrance and exit passageways; (5). the location of both these means at various points in the car with reference to the position of the side entrance door. All these elements are essential to bring about the advantages now claimed by the plaintiff, and the plaintiff relies upon them all as if all were set up in each claim. But it is to be observed that no one of the claims includes them all. Each claim must stand upon its own combination. While disclaiming the right to patent the prepayment method of operation, the plaintiff's contention drifts constantly into the assertion of the right to an idea as distinguished from a concrete construction of related parts or the particular mechanism by which the parts are actuated. But the plaintiff is not entitled to claim either the abstract idea of prepayment, on the one hand, or the mechanical appliance, on the other hand. His invention, if any, con-

sists in the "construction, combination, location and relative arrangement of parts," as specified in the patent. The form of the claims is in fact one commonly used for a particular structure rather than a combination of elements. All the claims read, "A passenger car having," etc., instead of "In a passenger car," etc.

The defendant's structure shows a car having a car body space and an end platform or vestibule, and unobstructed mergence of the two parts, movable doors. in the side of the vestibule, which are operated by means located at the point where the conductor is stationed on the platform near its mergence with the car body space. These means are located midway between the sides of the car, and serve (with the addition of a rail extending from the top of the step to the center of the platform) to separate the passages for entrance and exit. Comparing this structure with the claims in issue, as analyzed above, it seems clear that it would infringe only claims 3 to 6, inclusive, of the patent in suit if valid. Claim 3, in particular, raises the issue distinctly. All the remaining claims embody elements in construction, combination, location, and relative arrangement of parts which differentiate them from the elements present in the defendant's structure. It will therefore suffice to limit the inquiry with respect to validity to those claims which if valid would be infringed. Thus limited, the inquiry is whether the plaintiff is entitled to a patent for the following combination and arrangement of parts: A passenger car having a car body and a platform or vestibule space merging unobstructedly; a movable door in the side of the platform or vestibule; means for controlling the door, located at or near the line of mergence of the car body and the platform or between that point and the door.

Passenger cars having an unobstructed mergence of the car body or aisle space and platform space, movable doors in the side of the vestibule, operated by means of a distant control on the platform, were well known in the art prior to the date of the patent in suit. Inasmuch as this is not denied by the plaintiff, it is unnecessary to review the large number of patents, publications, and uses cited by the defendant. Perhaps the best known instances in evidence are the East Boston tunnel cars, the Boston elevated cars, the Chicago West Side elevated cars, and the cars in use in the subway in this city. Upon the question of anticipation it can make no difference that these cars were not operated upon the street surface (East Boston tunnel cars do in fact operate also upon the surface), and that passenger fares were not collected upon the cars. The claims in issue cover in terms simply "a passenger car" of a particular combination and arrangement of parts, and the specification states that the object of the invention is "to provide a passenger car for street or other railways." However, both these elements are disclosed in a passenger car embodying the construction of the claims under consideration in the Ridgeway patent, No. 102,435, issued as early as 1870. It is immaterial that in this patent the direction that the doors should be provided with such appliances that the conductor could control them from his station was made in the specification, and was not set forth in the

claims. If, therefore, there be patentable invention in placing the door of a car in the side of the vestibule rather than at the end of the car body, and operating it from a distant control upon the platform, that invention was not made by Rowntree.

But the plaintiff relies upon the precise location of the door controlling means. In the tunnel, subway, and elevated cars above referred to, the lever by which the doors are operated is located at the rear end of the platform, so that a guard can operate the doors on two cars. In the Ridgeway patent it is also at the rear end of the platform. A number of patents in evidence, showing distant control of doors or gates on street, surface, and other passenger cars, indicate various locations on the platforms for the control handle. In the Appelman patent, No. 509,641, and the Libbey patent, No. 575,484, it is located just outside the doorway into the car body, where the conductor stands on the defendant's car. The Thayer patent, No. 310,921, shows, among other things, a vertically movable folding gate controlled by a lever extending upward through the platform, and operated by a conductor or other person in charge of the car, or in the alternative by a pulley rope from any part of the car. In the Minneapolis (see the Hield patent, No. 546,116), and in the Rochester & Eastern car, the operating handle is located upon the front platform for operation by the motorman. In other words, the location of the control handle depends upon who is to operate it, and this, in turn, is arrived at by considerations of convenience. So long as the conductor collected fares in the car after the passengers were seated, he would be more or less beyond reach of a control handle located upon the rear platform, and the expedient was accordingly adopted of placing it upon the front platform for operation by the motorman, whose station was fixed. It was not that it did not occur to railway managers to place the control in the hands of the conductor. The evidence shows that the relative advantages of the two locations was fully considered. Indeed, the specification of the patent in suit suggests operation by the conductor or the motorman as may be desired. I am of opinion that there is no patentable invention in the location of the door controlling means upon the platform in accordance with the convenience of the person who is to operate it. Wherever located, its function is the same, and a change in its location involves ordinary mechanical skill, not invention.

The plaintiff asserts, however, that its improvement is to be applied to cars operated upon the prepayment plan. While formally disclaiming any exclusive right to the idea of prepayment, it does claim categorically that it is entitled, under the patent in suit, to exclusive rights in passenger cars having an entrance and exit door controlled by means located at any conductor's prepayment point. The claims of the patent in suit do not refer to the collection of fares, and only one claim mentions the conductor. But the claims have been varied in such a way as to locate the door controlling means at every point where the conductor usually stands in present methods of prepayment operation. As already indicated, I am of opinion that the location of the door controlling means (at least within limits that

would involve infringement by the defendant's structure) involves no invention; nor am I persuaded that the plaintiff's claim derives any support from its professed association with the prepayment method of operation. If there were any patentable invention in locating a distant door control handle at a prepayment point, that invention is disclosed in what appears to be the first embodiment of the prepayment method of street car operation. In the Ridgeway patent, No. 102,435, already referred to, the conductor was located in a small cab or stand attached to the rear of the platform, from which he collected fares from, or supervised the deposit of fares in a box directly in front of his station by, passengers entering through doorways on either side of the platform, the doors of which were to be provided with such appliances that the conductor could open and close them from his station. This structure seems to me to anticipate every feature of the claims under examination. In this structure the prepayment point is at the end of the platform, while in the defendant's car it is at the other end of the platform, near the line of mergence with the car body. It is shown in the latter position on the Sloan car, as operated in Chicago.

I find the issue in favor of the defendant.